1    Terryl T. Matt, Esq.
     Joseph Sherwood, Esq.
2    MATT LAW OFFICE
     310 East Main
3    Cut Bank, Montana  59427
     Telephone: (406) 873-4833
4    Facsimile:  (406) 873-0744
5    Email: terrylm@mattlawoffice.com

6    Jeffrey G. Winter, Esq.
7    Durocher & Winter, P.C.
     118 6th Street South
8    P.O. Box 1629
     Great Falls, Montana 59401
9    Telephone: (406) 727-4020
     Facsimile: (406) 771-7319
10   Email: jwinter@mtlawyers.net

11   *Attorneys for Plaintiffs*
12

13              UNITED STATES DISTRICT
14           FOR THE STATE OF MONTANA

15   HARRY BARNES, JOHN MURRAY,        No.
     ROBERT DESROSIER, KENNETH
16   HOYT, and JUDY WHITE, on behalf of   **CLASS ACTION COMPLAINT**
     themselves and all those similarly     **and DEMAND FOR JURY**
17   situated,                               **TRIAL**

18                    Plaintiffs,

19          v.

     3 RIVERS TELEPHONE
20   COOPERATIVE, INC, et al.,

21                    Defendants.

22

23

Barnes, et al. v 3 Rivers
Class Action Complaint
- Page 1

# TABLE OF CONTENTS

I.    NATURE OF THE ACTION ..................................................................3

II.   PARTIES .............................................................................................5

    A.  Plaintiffs ....................................................................................5

    B.  Defendant 3 Rivers Telephone Cooperative, Inc. .......................6

III.  JURISDICTION AND VENUE ..........................................................7

IV.   FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS ...........8

V.    CLASS ACTION ALLEGATIONS ...................................................17

VI.   CLAIMS AND CAUSES OF ACTION .............................................21

    COUNT I: Violation of Federal Communications Act, 47 U.S.C §§ 201(b) & 202 ..............21

    COUNT II: Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C § 2000d ..........22

    COUNT III: Violation of Montana Consumer Protection Act, MCA §§ 30-14-101 *et. seq.* ..23

    COUNT IV: Breach of Contract .....................................................24

    COUNT V: Breach of Fiduciary Duty ............................................25

    COUNT VI: Breach of Implied Covenant of Good Faith and Fair Dealing ..........................27

    COUNT VII: Unjust Enrichment (Contract Implied in Law) .................................................28

    COUNT VIII: Unjust Enrichment (Constructive Trust) ........................................................29

    COUNT IX: Injunctive Relief ........................................................31

VII.  PRAYER FOR RELIEF ....................................................................32

## I.    NATURE OF THE ACTION

1.    Plaintiffs, former members/patrons of 3 Rivers Telephone Cooperative, Inc. ("3 Rivers"), a Montana nonprofit membership corporation, bring this class action on behalf of themselves and all others situated to recover patronage capital credits ("capital credits") lawfully belonging to Plaintiffs and the Class.

2.    As alleged herein, 3 Rivers, its Board of Directors and its General Manager have engaged in a policy and practice with respect to the capital credits of its members (the "Policy and Practice") which unfairly discriminates between Native American members of 3 Rivers who make up the Browning Telephone/Internet Exchange ("Browning Exchange") and non-Native American members of 3 Rivers in other Telephone/Internet Exchanges in Montana by denying the members of the Browning Exchange the benefit of their capital credits.

3.    Upon 3 Rivers' sale of the Browning Exchange to Siyeh Communications ("SiyCom"), which took place effective December 31, 2020, 3 Rivers failed to retire the capital credits belonging to the Browning Exchange members. Instead, 3 Rivers decided to retain the capital credits belonging to the Browning Exchange members, even though the Browning Exchange members are no longer members of 3 Rivers by virtue of the sale.

4.    In addition to denying the members of the Browning Exchange the benefit of their capital credits, 3 Rivers has also engaged in a practice that disparately impacts Native American members compared to non-native members and has deprived 3 Rivers' Native American members of the same treatment as their non-Indian counterparts.

5.    As set forth herein, Plaintiffs allege 3 Rivers' decision to deny the members of the Browning Exchange the benefit of their capital credits is only one component of the Policy and Practice of 3 Rivers that has resulted in unjust and unreasonable treatment of the Browning Exchange members in violation of federal and state law.  In particular, the Policy and Practice violates the Federal Communications Act, Title VI of the Civil Rights Act of 1964, and the Montana Consumer Protection Act.  Additionally, the Policy and Practice constitutes a breach of 3 Rivers' contract with the Browning Exchange members, a breach of 3 Rivers' fiduciary duty to the Browning Exchange members, a breach of the implied covenant of good faith and fair dealing, and unjust enrichment of 3 Rivers at the expense of the Browning Exchange members.

6.    3 Rivers has no rational justification for this discriminatory Policy and Practice.

7.     Plaintiffs bring this case individually and on behalf of all others similarly situated for the purpose of protecting the rights of Native American members of the Browning Exchange from this discriminatory Policy and Practice for economic and non-economic, compensatory, and punitive damages and costs and reasonable attorney's fees and costs pursuant to Title VI of the Civil Rights Act.

## II.     PARTIES

### A. Plaintiffs

8.     Plaintiff, Harry Barnes, is a Native American member of the Blackfeet Tribe. Plaintiff Barnes formerly purchased telephone and other services from 3 Rivers, owns capital credits in 3 Rivers, and involuntarily ceased to be a member of 3 Rivers upon the sale of the Browning Exchange to SiyCom. Defendant 3 Rivers owes patronage capital to Plaintiff Barnes.

9.     Plaintiff, John Murray, is a Native American member of the Blackfeet Tribe. Plaintiff Murray formerly purchased telephone and other services from 3 Rivers, owns capital credits in 3 Rivers, and involuntarily ceased to be a member of 3 Rivers upon the sale of the Browning Exchange to SiyCom. Defendant 3 Rivers owes patronage capital to Plaintiff Murray.

10.     Plaintiff, Robert DesRosier, is a Native American member of the Blackfeet Tribe. Plaintiff DesRosier formerly purchased telephone and other services from 3 Rivers, owns capital credits in 3 Rivers, and involuntarily ceased to

be a member of 3 Rivers upon the sale of the Browning Exchange to SiyCom. Defendant 3 Rivers owes patronage capital to Plaintiff DesRosier.

11.   Plaintiff, Kenneth Hoyt, is a Native American member of the Blackfeet Tribe. Plaintiff Hoyt formerly purchased telephone and other services from 3 Rivers, owns capital credits in 3 Rivers, and involuntarily ceased to be a member of 3 Rivers upon the sale of the Browning Exchange to SiyCom. Defendant 3 Rivers owes patronage capital to Plaintiff Hoyt.

12.   Plaintiff, Judy White, resides on the Blackfeet Indian Reservation but is not an enrolled member of the Blackfeet Tribe.   Plaintiff White formerly purchased telephone and other services from 3 Rivers, owns capital credits in 3 Rivers, and involuntarily ceased to be a member of 3 Rivers upon the sale of the Browning Exchange to SiyCom.   Defendant 3 Rivers owes patronage capital to Plaintiff White.

Plaintiffs bring this action on behalf of themselves and on behalf of a class of similarly situated persons, described herein.

**B. Defendant 3 Rivers Telephone Cooperative, Inc.**

13.   Defendant 3 Rivers is a non-profit rural telecommunications membership corporation organized under, and governed by, the Rural Electric and Telephone Cooperative Act (RETCA), Mont. Code Ann. §§ 35-18-101 *et seq*.

14.   As a rural telecommunications cooperative organized under RETCA, 3 Rivers is required to operate on a non-for-profit and cooperative basis for the mutual benefit of all its members.

15.   As a non-profit cooperative, 3 Rivers is owned by the residential and commercial consumers to whom it sells telecommunication services, called "members."

16.   As a rural telecommunications cooperative, 3 Rivers is exempt from the jurisdiction and control of the Montana Public Service Commission, and may be sued in its corporate name. Mont. Code Ann. §§ 35-18-104 and 35-18-106(1).

17.   The corporate headquarters of 3 Rivers is located in Fairfield, Teton County, Montana. 3 Rivers also had an office located on the Blackfeet Indian Reservation in the town of Browning, Glacier County, Montana until the sale of the Browning Exchange to SiyCom, as described herein.

### III.   JURISDICTION AND VENUE

18.   This Court has jurisdiction over this action under 28 U.S.C. § 1331 because the action arises under the laws of the United States.

19.   The Court has supplemental jurisdiction of the state law claims stated herein pursuant to 28 U.S.C. § 1367.

20. Venue is proper in this division of the District of Montana under 28 U.S.C. §§ 1391(b) because the actions giving rise to the causes of action of the named Plaintiffs occurred in Glacier County, Pondera County and Teton County, Montana, and Defendant 3 Rivers' corporate headquarters is located in Teton County, Montana.

## IV.   FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

21. The total population of Glacier County, Montana is approximately 13,331 persons, of whom 8,429, or 64%, are Native American.

22. Glacier County is one of the poorest counties in the United States, with one of three residents living in poverty. The percentage is even larger on the Blackfeet Indian Reservation, where 39% of the population lives in poverty.

23. 3 Rivers provides telecommunication services to its members pursuant to a contract between each member and 3 Rivers.

24. 3 Rivers currently has approximately 15,000 members.

25. The total membership of 3 Rivers' Browning Exchange is approximately 2,000, most of whom are Native American.

26. The Board of Directors of 3 Rivers consists of 9 members elected from the membership.

27. 3 Rivers states the following on its website, with respect to capital credits:

   3 Rivers is a telephone cooperative and as a cooperative member, you will be allocated capital credits based on your patronage.   This

allocation will be a percentage of our annual earnings over and above expenses.

Although 3 Rivers no longer requires an investment for membership, we're still working for you and treating you as an investor.  So when 3 Rivers makes a profit the money is returned to our members through capital credits.

***What are capital credits?*** As nonprofit organizations, cooperatives seek to provide their patrons the highest quality service at the most affordable rates. Revenues earned above operating expenses are called margins. At the end of each fiscal year, the cooperative allocates a percentage of the margins to each patron on a pro-rata basis according to the total amount paid or produced for services. These allocations to patrons are known as capital credits. Upon approval of the Board of Trustees, these allocations are refunded to cooperative patrons.

28.     The Bylaws of 3 Rivers provide in relevant part as follows,

with respect to capital credits:

ARTICLE VIII.  NON-PROFIT OPERATION.

. . .

Section 2.     <u>Patronage Capital in Connection with Furnishing Telephone and Other Communication Services</u>.  In the furnishing of telephone and other communications services, the Cooperative's operations shall be so conducted that all members will through their patronage furnish capital for the Cooperative.  In order to induce patronage and to assure that the Cooperative will operate on a non-profit basis, the Cooperative is obligated to account on a patronage basis to all its members for all amounts received and receivable from the furnishing of telephone and other communication service in excess of operating costs and expenses properly chargeable against the furnishing of telephone and other communication service.  All such amounts in excess of operating costs and expenses at the moment of receipt by the Cooperative are received with the understanding that

they are furnished by the members as capital and the Cooperative is obliged to allocate and record the credits to a capital account for each member all such amounts in excess of operating costs and expenses.

. . .

If, at any time prior to dissolution or liquidation the Board shall determine that the financial condition of the Cooperative will not be impaired thereby, and in conformance with the concept of "non-profit" operation, the capital credited to members' accounts may be retired in full or in part, provided that any such retirement of capital shall be made in accordance with the capital credits policy of the Cooperative and in such amounts and upon such terms as shall be determined by the Board, provided that such policy shall be adopted by the Board prior to any retirement of capital.

. . .

Notwithstanding any other provisions of these Bylaws, upon the death or termination of Legal existence of any member, upon written application by the legal representative thereof, the Board may in its discretion and in conformance with the determined capital credits policy of the Cooperative as aforesaid, retire capital credited to such member upon the terms and conditions as set forth in said policy, provided that the financial condition of the Cooperative shall not be impaired thereby.

The members of the Cooperative, by dealing with the Cooperative, acknowledge that the terms and provisions of the Articles of Incorporation and the Bylaws shall constitute and be a contract between the Cooperative and each member, and both the Cooperative and the members are bound by such a contract, as fully as though each member had individually signed a separate instrument containing such terms and provisions. The provisions of this article of the Bylaws shall be called to the attention of each member of the Cooperative by posting in a conspicuous place in the Cooperative's office.

29.   The stated policy of 3 Rivers is to retire capital credits. This policy

provides:

3 Rivers Telephone Cooperative

Operations Policy

Number 308.

I. Subject:

RETIREMENT OF CAPITAL CREDITS

II. Policy:

It is the policy of 3 Rivers Telephone Cooperative in accordance with the Bylaws of the Cooperative to retire capital credits.

**Estates** - The Board of Trustees may choose to retire capital credits to the Estate of a deceased member. Any retirement consideration will be the member's allocated balance at the time of death. Any capital credit amount to be retired will be discounted using Net Present Value ("NPV") calculations. The NPV discount rate will be established as the prevailing prime interest rate on January 1st of each year.

**Disconnected Businesses** - The Board of Trustees may choose to retire capital credits of Disconnected Businesses. Any retirement consideration will be the business member's allocated balance at the time of disconnection. Any capital credit amount retired will be discounted using NPV calculations. The NPV discount rate will be established as the prevailing prime interest rate on January 1st of each year plus five percent (5%). This retirement will be optional at the discretion of the disconnected business.

**General Retirements** - The Board on an annual basis, after considering sound business and financial practices, Montana Code, relevant IRS Codes, and the Bylaws, may

choose to retire allocated capital credit balances. "Operational" and "Nonoperational" balances (see Allocation Policy Number 311) will be considered for retirement independently.

**Special Retirements** - From time to time the Board may opt to retire allocated capital credits under special circumstances.

**Amounts Due the Cooperative** - Regardless of the retirement method, any outstanding amounts due the cooperative will be deducted prior to retirement. If a discounting method is used, the discounting will take place prior to deduction of the outstanding amount.

**Oldest Open Year** - Is defined as the oldest year in which any capital credits remain unretired and on the books of the cooperative.

III.   Be it resolved:

The Board of Trustees will operate under this policy targeting funds for use in retirement of capital credits. Further the Board has adopted the following payout methodology in sequential order.

1. Estates discounted as defined above.
2. If any amount of the targeted retirement remains, then Disconnected Businesses discounted, as defined above.
3. If any amount of the targeted retirement remains, then Inactive Accounts less  than a minimum balance, determined by the Board.
4. If any amount of the targeted retirement remains, then a $200,000. General Retirement prorated over the all open years.
5. Finally, if any amount of the targeted retirement remains, the balance applied to the Oldest Open Year(s) until the targeted retirement is achieved.

> Management will institute the necessary business practices to accommodate this policy.

30. On or about December 10, 2019, 3 Rivers and SiyCom entered into an Asset Purchase Agreement in which 3 Rivers agreed to sell, and SiyCom agreed to purchase, substantially all of the assets held by 3 Rivers in the Browning Exchange.

31. SiyCom is a telecommunications utility chartered and owned by Siyeh Corporation pursuant to the laws of the Blackfeet Tribe. Siyeh Corporation is a federally chartered corporation wholly owned by the Blackfeet Nation.

32. 3 Rivers' sale of the Browning Exchange to SiyCom was completed on December 31, 2020.

33. When 3 Rivers sold the Browning Exchange to SiyCom, the board of 3 Rivers considered including the capital credits belonging to the members of the Browning Exchange in the sale, but ultimately decided not to include such capital credits in the sale because SiyCom could not afford to buy the Browning Exchange if such capital credits were included in the sale.

34. Upon the sale of the Browning Exchange to SiyCom, the board of 3 Rivers decided not to retire the capital credits of the former members of the Browning Exchange, but instead to retain the capital credits for the benefit of 3 Rivers and its remaining members and to eventually retire these capital

credits over a period of time, believed to be approximately 25 years.  The amount of capital credits that 3 Rivers has retained from the former Browning Exchange members is believed to be approximately 8.88 million dollars.

35.    Upon information and belief, 3 Rivers has capital reserves in excess of operating costs and expenses in an amount sufficient to retire the capital credits of the former members of the Browning Exchange without impairing the financial condition of 3 Rivers.

36.    3 Rivers' Bylaws include a Statement of Nondiscrimination, which provides in relevant part as follows:

> 3 Rivers Telephone Cooperative, Inc. has filed with the Federal Government, a Compliance Assurance in which it assures the Rural Electrification Administration that it will comply fully with all requirements of Title VI of the Civil Rights Act of 1964 and the Rules and Regulations of the Department of Agriculture issued thereunder, to the end that no person in the United States shall on the ground of race, color, sex, age, or national origin, or on the basis of handicap, be excluded from participation in, be denied the benefits of or be otherwise subjected to discrimination in the conduct of its program and the operation of its facilities.

37.    The failure to retire capital credits is one of many examples of disparate treatment by 3 Rivers of its members of the Browning Exchange.  3 Rivers has a policy and/or practice of treating its Native American members differently from its non-Native American members.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

38. For example, the FCC provided funding to 3 Rivers for new broadband construction in unserved areas.   However, 3 Rivers did not use any of these funds to upgrade service for members of the Browning Exchange.  Instead, 3 Rivers used this funding to upgrade service from copper cable to fiber optic cable for all its other members because "copper was good enough" for the Browning Exchange.

39. As another example, prior to the completion of the sale of the Browning Exchange to SiyCom, 3 Rivers took advantage of new FCC rules pertaining to accounting for consumer broadband-only loops (CBOLs), resulting in 3 Rivers receiving a windfall of excess revenue which is believed to be approximately 18 to 20 million dollars.  3 Rivers was able to obtain this excess revenue partly by utilizing the Browning Exchange members in its accounting calculations, even though 3 Rivers ultimately never furnished any CBOL service to the Browning Exchange members.

40. During the time 3 Rivers was negotiating with SiyCom for the sale of the Browning Exchange, Plaintiff Barnes was a member of the Board of Trustees of 3 Rivers.  Plaintiff Barnes was the only Native American member of the Board of Trustees and the only member of the Board of Trustees representing the interests of the Browning Exchange members.  Mr. Barnes repeatedly informed the Board that the capital credits belonging to the Browning

Exchange members should be retired to those members if the Browning Exchange is sold to SiyCom.

41.     At a special meeting held on January 6, 2021, the Board of Trustees of 3 Rivers voted to remove Plaintiff Barnes as a member of the Board on the stated grounds that he was "no longer a bona fide resident of the area served or to be served by the Cooperative."  After Plaintiff Barnes was removed from the Board of Trustees, the Board then voted on and approved a policy to <u>not</u> retire the capital credits belonging to the Browning Exchange members.  By removing Plaintiff Barnes from the Board of Trustees prior to the vote, the Board ensured that the Browning Exchange members would have no voice with respect to their capital credits in 3 Rivers.

42.     The Bylaws of 3 Rivers, Article IX, provides that 3 Rivers may not sell or otherwise dispose of all or any substantial portion of its property unless such sale or other disposition is authorized by the affirmative vote of not less than two-thirds (2/3) of all members at a duly held meeting of the members.

43.     3 Rivers did not obtain the authorization of its members prior to selling the Browning Exchange to SiyCom, as required by Article IX of the Bylaws. Consequently, the members of the Browning Exchange had no voice in the sale to SiyCom, or as to how their capital credits would be handled by 3 Rivers in connection with the sale.

44.   As a result of the Policy and Practice, the members of the Browning Exchange are compelled to remain owners of 3 Rivers, even though they no longer have any interest in 3 Rivers other than an expectation that their capital credits will eventually be retired, and they no longer have any right to vote in elections or on any matter submitted to the membership of 3 Rivers.

45.   The Policy and Practice has resulted in the denial of any monetary benefit to a disproportionate number of Native American members who contributed to the capital of 3 Rivers in comparison to non-Native members.

46.   The Policy and Practice has discriminated against Native American members when compared to non-Native members and has deprived 3 Rivers' Native American members of any meaningful benefit of their capital investment in 3 Rivers.

## V.   CLASS ACTION ALLEGATIONS

47.   This case is brought on behalf of all Native Americans who are, or were, members of 3 Rivers' Browning Exchange, who own capital credits in 3 Rivers, and who do not owe money to 3 Rivers in excess of the sum of their capital credits (the "Class").

48.   The Class comprises more than 2,000 former members of 3 Rivers and is so numerous that joinder of all members as Plaintiffs is impracticable.

49.    There are questions of law and fact common to all members of the Class. The common questions of law and fact include, but are not limited to:

a.    Whether the Policy and Practice of 3 Rivers with respect to the Class is unjust and unreasonable and, thus, violates the Federal Communications Act, 47 U.S.C. § 201 and/or 47 U.S.C. § 202.

b.    Whether the Policy and Practice of 3 Rivers with respect to the Class violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

c.    Whether the Policy and Practice of 3 Rivers with respect to the Class violates the Montana Consumer Protection Act, Mont. Code Ann. §§ 30-14-101 *et seq.*

d.    Whether the Policy and Practice of 3 Rivers with respect to the Class is a breach of the contract between 3 Rivers and the Class.

e.    Whether the Policy and Practice of 3 Rivers with respect to the Class is a breach of 3 Rivers' fiduciary duty owed to the Class.

f.    Whether the Policy and Practice of 3 Rivers with respect to the Class is a breach of the implied covenant of good faith and fair dealing.

g.    Whether 3 Rivers was unjustly enriched as a result of its Policy and Practice with respect to the Class.

50.   The claims of the Plaintiffs are typical of the claims of the Class.  Plaintiffs are qualified to and will fairly and adequately protect the interests of each member of the Class with whom they have a well-defined community of interest and the claims (or defenses, if any) are typical of all members of the Class.

51.   The Plaintiffs will fairly and adequately protect the interest of the Class. Plaintiffs do not have a conflict with the Class and are qualified to and will fairly and adequately protect the interests of each member of the Class with whom they have a well- defined community of interest and typicality of claims, as alleged herein.  Plaintiffs acknowledge they have an obligation to the Court to make known any relationship, conflict, or difference with any putative class member.  Plaintiffs' attorneys and proposed class counsel are well versed in the rules governing class action and complex litigation regarding discovery, certification, and settlement.

52.   3 Rivers has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

53.   The questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and a class action is

superior to other available methods for the fair and efficient adjudication of this controversy.

54. Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to the adjudication and may impair and impede their ability to protect their interests.

55. Most individual members of the Class have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation and the significant costs attendant to litigation on this scale.

56. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, the Class will continue to suffer damages and 3 Rivers' violations of law will proceed without remedy or recourse.

57. This class action will result in the orderly and expeditious administration of the Class members' claims. Economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured.

58. Plaintiffs and the Class have suffered injury in fact due to the loss of value or benefit of their capital credits as a result of Defendants' implementation of the Policy and Procedure.

59.   The circumstances of this action fulfill and meet the prerequisites, criteria, and requirements of a class action in accordance with Fed. R. Civ. P. 23.

## VI.   CLAIMS AND CAUSES OF ACTION

### COUNT I: Violation of Federal Communication Act, 47 U.S.C. §§ 201(b) & 202

60.   Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

61.   The Federal Communications Act, 47 U.S.C. § 201(b) requires all charges, practices, classifications, and regulations for and in connection with communications services furnished by a common carrier engaged in interstate or foreign communication, to be just and reasonable.

62.   The Federal Communications Act, 47 U.S.C. § 202, prohibits any common carrier from making "any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage."

63.   Plaintiffs and the Class are persons who received communication services from 3 Rivers and are within the meaning of 47 U.S.C. § 201(b) & 202.

64.    3 Rivers is a "common carrier" and provider of communication services within the meaning of 47 U.S.C. § 201(b) & 202.

65.    3 Rivers has violated the Federal Communications Act by adopting, implementing, and enforcing an unjust and unreasonable Policy and Practice that denies Plaintiffs and the Class the benefit of their capital credits on the basis of race.

66.    The members of the Class have suffered injury as a result of 3 Rivers' violation of the Federal Communications Act.

**COUNT II:  Violation of Title VI of the Civil
Rights Act of 1964, 42 U.S.C. § 2000d**

67.    Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

68.    Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, prohibits discrimination on the ground of race, color, or national origin under any program or activity receiving Federal financial assistance.

69.    3 Rivers receives Federal financial assistance from the Rural Electrification Administration (REA) and thus is subject to the requirements of Title VI of the Civil Rights Act of 1964.

70.    3 Rivers has violated Title VI of the Civil Rights Act of 1964 by adopting, implementing, and enforcing an unjust, unreasonable, and discriminatory

Policy and Practice that denies Plaintiffs and the Class the benefit of their capital credits on the basis of race.

71.   3 Rivers has violated Title VI of the Civil Rights Act of 1964 by adopting, implementing, and enforcing an unjust, unreasonable, and discriminatory Policy and Practice that denies Plaintiffs and the Class the benefit of equal treatment and protection on the basis of race.

72.   Plaintiffs and the Class have suffered injury as a result of 3 Rivers' violation of Title VI of the Civil Rights Act of 1964.

**COUNT III:  Violation of Montana Consumer
Protection Act, Mont. Code Ann. §§ 30-14-101 *et seq*.**

73.   Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

74.   The Montana Consumer Protection Act, Mont. Code Ann. §§ 30-14-101 *et seq*. prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

75.   Plaintiffs and the Class are consumers within the meaning of Mont. Code Ann. § 30-14-102 (1).

76.   3 Rivers engages in trade and/or commerce within the meaning of Mont. Code Ann. § 30-14-102 (8).

77.   3 Rivers' adoption, implementation, and enforcement of the Policy and Practice constitutes unfair and/or deceptive acts or practices with respect to Plaintiffs and the Class, who have suffered injury as a result.

### COUNT IV: Breach of Contract

78.   Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

79.   The Montana Supreme Court recognizes that the relationship between a utilities cooperative and its members is contractual in nature. *See, e.g., Granbois v. Big Horn County Elec. Co-op, Inc.*, 296 Mont. 45, 51, 986 P.2d. 1097, 1101, 1999 MT 222, ¶25.

80.   3 Rivers entered into a contract with Plaintiffs and the Class in which 3 Rivers agreed to furnish telecommunication services in exchange for capital contributions from the members.

81.   The terms of the contract between 3 Rivers and Plaintiffs and the Class are contained in the Articles of Incorporation and the Bylaws of 3 Rivers.

82.   The Bylaws of 3 Rivers, Article IX, provides that 3 Rivers may not sell or otherwise dispose of all or any substantial portion of its property unless such sale or other disposition is authorized by the affirmative vote of not less than two-thirds (2/3) of all members at a duly held meeting of the members.

83.   3 Rivers did not obtain the authorization of its members prior to selling the Browning Exchange to SiyCom, as required by Article IX of the Bylaws. Consequently, Plaintiffs and the Class had no voice in the sale to SiyCom, or as to how their capital credits would be handled by 3 Rivers in connection with the sale.

84.   By failing to obtain the authorization of its members prior to selling the Browning Exchange to SiyCom, as required by Article IX of the Bylaws, 3 Rivers breached its contract with its members and the Class.

85.   Plaintiffs and the Class have suffered injury as a result of 3 Rivers' breach of its contract.

**COUNT V: Breach of Fiduciary Duty**

86.   Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

87.   Plaintiffs and the Class provided consideration and performed their obligations under their contract with 3 Rivers by, among other things, contributing capital to fund 3 Rivers' operating expenses and to pay for the telecommunication services they received.

88.   3 Rivers was for years the only source of telephone and internet service for Plaintiffs and the Class.  3 Rivers' contract with Plaintiffs and the Class is a

contract of adhesion.  Plaintiffs and the Class had no choice but to accept the terms of the contract, in order to have access to telecommunication services.

89.   3 Rivers enjoys a special status as a rural utility cooperative, including tax-exempt status and exemption from regulation by Montana's Public Service Commission.

90.   3 Rivers also enjoyed a special status as the sole source of communication for the Blackfeet Indian Reservation.

91.   The relationship between 3 Rivers and the Class is a "special relationship" that gives rise to a fiduciary relationship and fiduciary duties on the part of 3 Rivers.

92.   The fiduciary relationships and the duties arising therefrom are created by the common law of the State of Montana; pursuant to 3 Rivers' Bylaws and Articles of Incorporation; as a result of 3 Rivers' position as trustee of the capital contributions and patronage capital of Plaintiffs and the Class; and by virtue of 3 Rivers' contracts with Plaintiffs and the Class to provide telecommunication services.

93.   In all matters concerning these fiduciary relationships, 3 Rivers is and was obligated to act in the best interests of its members, which include Plaintiffs and the Class.

94.   3 Rivers' adoption, implementation, and enforcement of a Policy and Practice that denies Plaintiffs and the Class the benefit of their capital credits is a breach of its fiduciary duty to Plaintiffs and the Class, who have suffered injury as a result.

## COUNT VI: Breach of Implied Covenant
## of Good Faith and Fair Dealing

95.   Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

96.   The contract between 3 Rivers and the Class contained an implied covenant of good faith and fair dealing.

97.   There was a special relationship between 3 Rivers and the Class, in that 3 Rivers owed fiduciary duties to the Class.

98.   3 Rivers and the Class were in inherently unequal bargaining positions because 3 Rivers maintained a monopoly over its service area, compelling members of the Class to contract with it for telecommunication services, or go without.

99.   There was a non-profit motivation for entering into a contract, in that the Class contributed capital to 3 Rivers with the understanding and expectation that such capital would be used in accordance with 3 Rivers' nonprofit purposes and status.

100. The members of the Class are especially vulnerable because of the type of harm they have suffered—their patronage capital is being withheld by 3 Rivers while they are denied the right to vote and otherwise participate in the affairs of 3 Rivers.

101. 3 Rivers is aware of the vulnerability of the Class.

102. 3 Rivers' adoption, implementation, and enforcement of the Policy and Practice that denies Plaintiffs and the Class the benefit of their capital credits is a breach of the implied covenant of good faith and fair dealing.

103. Plaintiffs and the Class have suffered injury as a result of 3 Rivers' breach of the implied covenant of good faith and fair dealing.

**COUNT VII:  Unjust Enrichment (Contract Implied in Law)**

104. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

105. Plaintiffs and the Class request the Court to recognize a contract between 3 Rivers and the Class based on the principles of justice and equity.

106. As alleged herein, 3 Rivers used its authority as a fiduciary and trustee to take advantage of Plaintiffs and the Class by denying them the right to vote on the sale of the Browning Exchange to SiyCom and by retaining their capital credits upon the sale.  Furthermore, because Plaintiffs and the Class are no

longer members of 3 Rivers by virtue of the sale, they now have no vote or other say in any future matters involving 3 Rivers or their capital credits.

107. As a result of the Policy and Practice, 3 Rivers was unjustly enriched by the patronage capital of Plaintiffs and the Class. 3 Rivers continues to use this patronage capital for its own benefit and for the benefit of its current members, to the detriment of Plaintiffs and the Class.

108. Plaintiffs and the Class have suffered actual damages as a result of the Policy and Practice and conduct giving rise to the unjust enrichment of 3 Rivers. Such actual damages include the amount of patronage capital that Plaintiffs contributed to 3 Rivers, but that 3 Rivers has withheld from them.

**COUNT VIII:  Unjust Enrichment (Constructive Trust)**

109. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

110. As alleged herein, Plaintiffs and the Class conferred a benefit on 3 Rivers by providing it with capital to fund its operations and to build its capital reserves in excess of operating costs and expenses.

111. As a result of the capital contributions of Plaintiffs and the Class, 3 Rivers' revenue has exceeded its expenses, allowing it to accumulate capital reserves. Furthermore, as previously stated, prior to the completion of the sale of the Browning Exchange to SiyCom, 3 Rivers took advantage of new FCC rules

pertaining to accounting for consumer broadband-only loops (CBOLs), which resulted in 3 Rivers receiving a windfall of excess revenue believed to total approximately 18 to 20 million dollars.  3 Rivers was able to obtain this excess revenue partly by utilizing Plaintiffs and the Class in its accounting calculations, even though 3 Rivers ultimately never furnished any CBOL service to them.

112.  3 Rivers had an appreciation or knowledge of the benefits that Plaintiffs and the Class conferred upon it, by virtue of 3 Rivers' use of capital contributions to fund its operations and to build its capital reserves, and by utilizing Plaintiffs and the Class in its CBOL accounting calculations to obtain a windfall of excess revenue without ever furnishing any CBOL service to them.

113.  3 Rivers accepted and retained the benefits that Plaintiffs and the Class conferred upon it by providing 3 Rivers with patronage capital.

114.  Because Plaintiffs and the Class had no vote or other say in 3 Rivers' sale of the Browning Exchange to SiyCom, or as to how their capital credits would be handled by 3 Rivers in connection with the sale, and because Plaintiffs and the Class are no longer members of 3 Rivers by virtue of the sale, and thus have no vote or other say in any matters involving 3 Rivers or their capital credits, it is inequitable for 3 Rivers to retain the benefit of the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

patronage capital provided by Plaintiff and the Class without paying Plaintiffs and the Class for the value of such capital.

115. 3 Rivers would be unjustly enriched if it were permitted to retain the patronage capital of Plaintiffs and the Class. Accordingly, pursuant to Mont. Code Ann. § 72-38-123, a constructive trust should be placed on all proceeds, funds, or property by which 3 Rivers was unjustly enriched.

## COUNT IX:  Injunctive Relief

116. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

117. 3 Rivers' implementation and enforcement of the Policy and Practice threatens to cause irreparable injury to Plaintiffs and the Class.

118. The payment of money damages is not sufficient to compensate Plaintiffs and the Class for the threatened injury.

119. Balancing of the equities in this case weighs in favor of Plaintiffs and the Class.  3 Rivers' decision to deny the members of the Browning Exchange their benefit of their capital credits deprives and continues to deprive them of resources that are needed for many things, including basic necessities such as school supplies for their children, paying electrical bills, etc.

120.    Issuance of a preliminary and permanent injunction to prohibit 3 Rivers from dissipating the funds necessary to make Plaintiffs and the Class whole would be in the public interest.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.    That this Court certify the class and appoint Plaintiffs as Class representatives and their undersigned counsel as class counsel;

2.    That 3 Rivers be ordered to retire the capital credits owned by Plaintiffs and the Class with prejudgment interest from the effective date of the sale of the Browning Exchange to SiyCom;

3.    That 3 Rivers be ordered to provide a complete accounting of the capital contributions made by Plaintiffs and the Class, including 3 Rivers' use of the capital, calculation of revenue, identification of necessary operating costs, identification of patronage capital, and any and all retirements of patronage capital and when and how made, such that the patronage capital due to each Plaintiff and member of the Class may be determined;

4.    That a constructive trust be placed on all proceeds, funds, or property obtained by 3 Rivers as a result of its breaches of fiduciary duty and to protect the rights and interests of Plaintiffs and the Class;

5. That a constructive trust be placed on all proceeds, funds, or property by which 3 Rivers was unjustly enriched;

6. That 3 Rivers be enjoined from any further implementation or enforcement of the Policy and Practice;

7. That Plaintiffs and the Class be awarded any and all damages allowed by law, including punitive damages, in an amount to be determined at trial;

8. That Plaintiffs and the Class be awarded their reasonable costs and attorney's fees to the extent allowed by applicable law; and

Any other award and relief the Court determines is just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues of fact raised in this action.

DATED this <u>30th</u> day of November, 2021.

DUROCHER & WINTER, P.C.

<u>/s/ Jeffrey G. Winter</u>
Jeffrey G. Winter, Esq.
118 6th Street South
P.O. Box 1629
Great Falls, MT 59401
Tel: (406) 727-4020
Email: jwinter@mtlawyers.net

*Attorneys for Plaintiffs*

MATT LAW OFFICE®

<u>/s/ Terryl T. Matt</u>
Terryl T. Matt, Esq.
310 E. Main St.
Cut Bank, MT  59427
Tel: (406) 873-4833
Email: terrylm@mattlawoffice.com

*Attorneys for Plaintiffs*