## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| HARRY BARNES, JOHN MURRAY, ROBERT DESROSIER, KENNETH HOYT, and JUDY WHITE, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>3 RIVERS TELEPHONE COOPERATIVE, INC,<br><br>Defendants. | CV-21-118-GF-BMM<br><br><br>ORDER |

## INTRODUCTION

Defendant 3 Rivers Telephone Cooperative, Inc. ("3 Rivers") has filed a Motion to Dismiss the Amended Complaint (Doc. 9) filed by Plaintiffs Harry Barnes, John Murray, Robert Desrosier, Kenneth Hoyt, and Judy White ("Plaintiffs") pursuant to Fed. R. Civ. P 12(b)(6). (Doc. 14.) 3 Rivers contends that all of Plaintiffs' claims should be dismissed. The Court held a hearing on the matter on May 23, 2022. (Doc. 24.) The Court grants, in part, and denies, in part, 3 Rivers' motion to dismiss for the reasons discussed below.

1

## BACKGROUND

3 Rivers operates as a Montana non-profit rural telecommunications membership corporation owned by the residential and commercial consumers to whom it sells telecommunication services, called cooperative "members." (Doc. 9 at ¶¶ 14-16.) Plaintiffs are Native American former members of 3 Rivers who make up the Browning Telephone/Internet Exchange ("Browning Exchange") (*Id*. at ¶ 2.) The cooperative allocates a percentage of any revenues earned above operating expenses ("the margins") at the end of each fiscal year to each member on a pro-rata basis according to the total amount paid or produced for services. (*Id*. at ¶ 28.) These allocations to patrons are known as capital credits. (*Id*.) Upon approval of the Board of Trustees, these allocations are retired to cooperative members. (*Id*.)

The bylaws that govern 3 Rivers oblige the Cooperative to allocate and record capital credits to a capital account for each member all such amounts in excess of operating costs and expenses. (*Id*. at ¶ 29.) If, at any time before dissolution or liquidation, the Board shall determine that the financial condition of the Cooperative will not be impaired, thereby, and in conformance with the concept of "non-profit" operation, the capital credited to members' accounts may be retired in full or in part, provided that any such retirement of capital shall be made in accordance with the capital credits policy of the Cooperative. (*Id*.)

Plaintiffs filed this class action on behalf of former members of 3 Rivers. (*Id.* at ¶ 1.) Plaintiffs claim that 3 Rivers discriminated against its Native American cooperative members by denying Native American members the retirement of their capital credits. (*Id.* at ¶ 2.) Plaintiffs claim that 3 Rivers improperly determined that it would not retire the capital credits of members who comprise the Browning Exchange following its sale of the Browning Exchange to Siyeh Communications ("Siyeh") in December of 2019. (*Id.* at ¶ 31.) Plaintiffs claim that 3 Rivers retained the capital credits for the benefit of itself and its predominantly non-Native American members. (*Id.* at ¶ 3.)

The Browning Exchange included the largest proportion Native American population that 3 Rivers served. (*Id.* at ¶ 26.) Plaintiffs allege that 3 Rivers decided not to include the capital credits belonging to the Browning Exchange members in the sale to Siyeh Communications to allow Siyeh Communications to afford the purchase of the Browning Exchange. (*Id.* at ¶ 34.) Plaintiffs claim that 3 Rivers valued the capital credits retained from the Browning Exchange members at $8.88 million. (*Id.* at ¶ 35.)

Plaintiffs allege that 3 Rivers also decided not to retire the capital credits, at or before the sale, to benefit itself and its predominantly non-Native American remaining membership. (*Id.*) Plaintiffs further allege that 3 Rivers possesses sufficient capital reserves in excess of operating costs and expenses in an amount

sufficient to retire the capital credits of the former members of the Browning Exchange, pursuant to the terms of 3 Rivers' bylaws, without impairing the financial condition of 3 Rivers. (*Id*. at ¶ 36.)

Plaintiffs claim that the failure by 3 Rivers to retire the capital credits "is but one example of disparate treatment" by 3 Rivers of its members of the Browning Exchange. (*Id*. at ¶ 38.) Plaintiffs claim that 3 Rivers failed to use federal funding for new broadband construction in unserved areas to upgrade services for members of the Browning Exchange. (*Id*. at ¶ 40.) In particular, Plaintiffs allege that 3 Rivers excluded the Browning Exchange from its plans to upgrade from copper to fiber optic cable because, 3 Rivers believed that "copper was good enough" for the Browning Exchange. (*Id*. at ¶ 41.) 3 Rivers contends that it excluded Plaintiffs from the upgrade due to right-of-way problems on the Blackfeet Reservation. (*Id*. at ¶ 45.) Plaintiffs note that Birch Creek sits on the Blackfeet Reservation. Plaintiffs allege that 3 Rivers installed fiber optic cable on that portion of the Blackfeet Reservation due to the fact that Birch Creek forms part of Dupuyer Exchange, which consists mainly of non-Native Americans. (*Id*. at ¶ 45.)

Plaintiffs allege the following additional instances of discrimination by 3 Rivers against members of the Browning Exchange: 1) 3 Rivers' failure to repair a damaged cable pedestal at the home of a Browning Exchange member in Heart Butte that has still not been repaired now for over 4 years; 2) the continued failure by 3

Rivers to repair a Browning Exchange member's post break in Little Badger that holds the pedestal for his cable; 3) 3 Rivers took over 15 years to correct a damaged pedestal near the Browning Public Schools food service building; and 4) 3 Rivers refused to correct a cable in poor condition in Femaville, near the town of Browning for many years, causing the neighborhood's internet service to be practically unusable. (*Id*. at ¶¶ 56-61.)

Plaintiffs also allege that 3 Rivers benefitted from financial manipulation through the sale of the Browning Exchange to Siyeh Communications. (*Id*. at ¶ 62.) Plaintiffs claim that 3 Rivers took advantage of new FCC rules pertaining to accounting for consumer broadband-only loops before the completion of the sale of the Browning Exchange to Siyeh Communications. This action resulted in 3 Rivers receiving a windfall of excess revenue totaling approximately $18 to $20 million. (*Id*.) Plaintiffs maintain that 3 Rivers obtained this excess revenue partly by including the Browning Exchange members in its accounting calculations. (*Id*. at ¶ 63.)

Plaintiff Barnes served as the Browning Exchange's representative on the 3 Rivers Board before the sale to Siyeh Communications. Plaintiff Bares was the only Native American on the board. (*Id*. at ¶ 64.) Plaintiffs allege that 3 Rivers removed Plaintiff Barnes from the Board at a special meeting after Plaintiff Barnes urged 3 Rivers to retire the credits. (*Id*. at ¶¶ 65-66.) The Board claimed that Plaintiff Barnes

no longer qualified as "a bona fide resident of the area served or to be served by the Cooperative." (*Id.*) The Board voted to not retire the capital credits for the Browning Exchange after Plaintiff Barnes's removal. (*Id.*)

Plaintiffs allege the following claims in their Amended Complaint: 1) violation of the Federal Communications Act; 2) violation of the Civil Rights Act; 3) violation of the Montana Consumer Protection Act; 4) breach of contract; 5) breach of fiduciary duty; 6) breach of the implied covenant of good faith and fair dealing; 7) unjust enrichment; and 8) Plaintiffs seek injunctive relief to preserve the funds allegedly owed to Browning Exchange members.

## LEGAL STANDARD

### *12(b)(6)*

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Mid. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

6

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard does not require probability, but "asks for more than sheer possibility that defendant has acted unlawfully." *Id*.

## ANALYSIS

3 Rivers moves to dismiss all of Plaintiffs' claims. The Court will address each of the claims in turn.

## I.     Federal Communication Act (Count I)

3 Rivers argues that Plaintiffs cannot assert a claim under the Federal Communications Act ("FCA") because the FCA is limited to oversight of rates and charges imposed by "common carrier" telecommunications companies rather than governing "the relationship between a rural cooperative and its members/owners with respect to the retirement of patronage capital." (Doc. 14 at 31.) 3 Rivers also argues that the FCA does not address racial discrimination between owners of a cooperative and cooperative members regarding allocation or retirement of patronage capital. (*Id*.)

To determine whether the FCA might provide Plaintiffs relief, the Court must first ascertain whether the FCA covers the credits. The FCA is not as narrow as 3 Rivers argues. The FCA provides that "[a]ll charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful." 42 USC § 201(b). The capital credits constitute a "practice [. . .] for and in connection with such communication service." Even if 3 Rivers were correct that the FCA were limited to charges and rates, the credits directly relate to 3 Rivers' rates and charges. 3 Rivers uses the credits to ensure that it imposes just and reasonable rates and charges. 3 Rivers would not be able to operate as a non-profit Without the retirement of credits.

The text of the FCA also supports Plaintiffs' assertion that the FCA was intended to prevent racial discrimination. Section 202 (titled "Discriminations and preferences") of the FCA provides:

> (a)Charges, services, etc.
> It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or *give any undue or unreasonable preference or advantage to any particular person, class of persons*, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

47 USC §202(a) (emphasis added). The inclusion of race as race as a protected "class" under federal law, 42 U.S.C. § 2000e–2(a), leads the Court to deem it reasonable that the FCA's text would cover discrimination on the basis of race as it pertains to these credits.

## II.     Violation of the Civil Rights Act (Count II)

3 Rivers argues that a discrimination claim under Title VI of the Civil Rights Act should require pleading with particularity. (Doc. 14 at 24.) 3 Rivers argues that, regardless of the pleading standard, Plaintiffs have failed to allege sufficient facts regarding discrimination to allege a plausible discrimination claim. (*Id.* at 25.)

To state a claim for damages under Title VI, a plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance. *Joseph v. Boise State Univ.*, 998 F. Supp. 2d 928, 944 (D. Idaho 2014) (quoting *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994)). Plaintiffs allege that 3 Rivers receives federal financial assistance from the Rural Electrification Administration (REA) and thus stands subject to the requirements of Title VI of the Civil Rights Act (Doc. 9 at ¶ 97.)

A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). A motion to dismiss a Title VI claim proves appropriate where a plaintiff fails to allege any evidence to indicate

that racial bias motivated a defendant's action and that the allegations made support a finding that alleged bias was not racial in nature. *Joseph,* 998 F. Supp. 2d at 944. The Court must address the "critical question" in addressing a motion to dismiss of whether the actions or inactions of the defendants were *because of* their racial bias. *Id*. As this Court has stated: "discrimination most often arises through 'discreet manipulations,' usually 'hidden under a veil of self-declared innocence.'" *Doe v. Mont. State Univ.*, 2020 WL 7493128, * 7 (D. Mont. 2020). Victims of discrimination "usually find themselves constrained to the cumulative weight of circumstantial evidence." *Id.*

The U.S. Supreme Court has acknowledged the utility of circumstantial evidence in discrimination cases. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–100 (2003). The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Id.* at 100 (quoting *Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500, 508, n. 17 (1957)). Courts recognize that discrimination is "rarely explicit and thus rarely the subject of direct evidence," and, therefore, it "may be proven through the elimination of other non-discriminatory reasons until the most plausible reason remaining is discrimination." *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 61 (1st Cir. 1999).

Plaintiffs' Amended Complaint demonstrates circumstantial evidence that 3 Rivers engaged in racial discrimination. Plaintiffs allege that 3 Rivers withheld the capital credits due to their race and that the 3 Rivers removed the only Native American board member before voting not to retire the Browning Collective's capital credits. (Doc. 9 at ¶¶ 65-66.) Plaintiffs also alleged multiple instances where the Browning Collective membership received service inferior to surrounding collectives with a greater proportion of non-Native American populations. (*Id.* at ¶¶ 56-61.) Plaintiffs allege sufficient facts to maintain a Title VI claim.

## III.   Violation of the Montana Consumer Protection Act (Count III)

3 Rivers argues that Plaintiffs are not "consumers" for the purpose of the Montana Consumer Protection Act (MPCA). The MPCA defines a consumer as "a person who purchases or leases goods, services, real property, or information primarily for personal, family, or household purposes." Mont. Code Ann. § 30-14-102(1). Under the MPCA, "unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." § 30-14-103, MCA. The Montana Supreme Court has held as a matter of law that an unfair act or practice is one which offends established public policy and which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *Rohrer v. Knudson*, 203 P.3d 759, 764 (Mont. 2009).

3 Rivers argues that Plaintiffs claims arise from their status as owners of the cooperative and not from their use of services provided by the cooperative. 3 Rivers suggests a distinction without a difference. The capital credits at issue arise from overpayment for services undeniably related to personal, family, or household purposes. Telecommunications services represent consumer services. *Bresnan Communications, LLC v. State, Department of Revenue*, 315 P.3d 921, 928 (Mont. 2013). Plaintiffs argue that, without their purchase of 3 Rivers' telecommunications services, Plaintiffs would not have been member/owners of the cooperative and would not have accrued capital credits. The capital credits arose from Plaintiffs' purchase of services from 3 Rivers. Plaintiffs qualify as consumers under the MPCA. *Bresnan*, 315 P.3d at 928. Plaintiffs allege sufficient facts to state a plausible MPCA claim.

## IV.    Breach of Contract (Count IV)

3 Rivers argues that Plaintiffs fail to establish a breach of contract claim. (Doc. 14 at 24.) Plaintiffs allege that 3 Rivers breached the explicit terms of its bylaws when it 1) failed to obtain the authorization of its members before selling the Browning Exchange to Siyeh Communications; and 2) sold a substantial portion of its property without an affirmative vote from two-thirds of all members at a duly held meeting of the members (Doc. 9 at ¶¶ 114-115.)

The determination of whether a party materially breached a contract presents a question of fact. *Eschenbacher v. Anderson*, 34 P.3d 87, 91 (Mont. 2001). A court must interpret a contract in such a way that makes it lawful and reasonable, so long as it can be done without violating the intent of the parties. Mont. Code Ann. § 28–3–201. 3 Rivers argues that Plaintiffs fail to allege that the sale of the Browning Exchange represented a "substantial portion of 3 Rivers' property." (Doc. 14 at 34.) The bylaws provide that "3 Rivers may not sell or otherwise dispose of all or any substantial portion of its property unless such sale or other disposition is authorized by the affirmative vote of not less than two-thirds (2/3) of all members at a duly held meeting of the members." (Doc. 9 at ¶ 29.) Plaintiffs allege that the Browning Exchange has 2,000 members and 3 Rivers currently has 15,000 members. (*Id.* at ¶¶ 25-26.) Actions that affect greater than 10% of a utility's membership represent a sufficient portion of the membership to survive at the pleadings stage.

Plaintiffs additionally allege breach of contract for failure to follow the bylaws requirements for the distribution of capital credits. 3 Rivers argues that Plaintiffs assert merely conclusory allegations. Plaintiffs cite the bylaws sections that provide for, and may require, the retirement of capital credits when 3 Rivers takes actions to terminate members. Additional facts support Plaintiffs' interpretation of the bylaws, including statements on 3 Rivers' website that "as a cooperative member, you will

be allocated capital credits based on your patronage." (*Id.* at ¶ 28.) Plaintiffs allege sufficient facts to state a plausible breach of contract claim.

## V.      Breach of Fiduciary Duty (Count V)

3 Rivers bases its argument that the fiduciary duty claim should be dismissed on recent decisions from the Montana Supreme Court. The Montana Supreme Court determined in *Wolfe v. Flathead Electric Cooperative., Inc.*, that no fiduciary relationship exists between a utility cooperative and its members absent a special relationship. 431 P.3d 327, 331 (Mont. 2018). This Court previously has stated that a special relationship may exist only if a cooperative undertook efforts to advise a member of certain rights. *Wolfe v. Flathead Electric Cooperative, Inc.*, 2017 WL 8184352, at *5 (D. Mont. Dec. 21, 2017) (citing *Morrow v. Bank of America., N.A.*, 324 P.3d 1167, 1186 (Mont. 2014)). The Court in *Wolfe* reasoned that there *could* be circumstances under which a cooperative undertakes to advise a member of certain rights and thereby creates a special relationship, "but that is not the situation here." *Id.* No evidence before the Court indicated that Flathead Electric Cooperative made any special effort to advise any particular member. *Id.* The Court agrees that the same analysis applies here because Plaintiffs do not allege that 3 Rivers made a special effort to advise Plaintiffs.

*Wolfe* further considered prior decisions of the Montana Supreme Court involving cooperatives and determined that "nothing in the language of either

14

opinion suggests the existence of a fiduciary relationship." *Id* (citing *Howe v. Big Horn Electric Cooperative*, 670 P.2d 936, 937 (Mont. 1983); *Granbois v. Big Horn County Electric Cooperative, Inc.*, 986 P.2d 1097, 1101 (Mont. 1999)). In *Howe*, the Montana Supreme Court recognized the relationship between the Co-op and each member as being contractual in nature. 670 P.2d at 937. *Wolfe* affirmed this determination. 431 P.3d at 331.

Plaintiffs admit that they have not established facts that give rise to a "special relationship" to support their breach of fiduciary duty claim. (Doc. 20 at 11.) The Court determines that no facts alleged in the Amended Complaint, even taken in the light most favorable to Plaintiffs, could establish a plausible special relationship. Plaintiffs do not allege that 3 Rivers undertook efforts to advise any of the Browning Exchange members of their rights (Doc. 14 at 10.) Plaintiffs' fiduciary duty claim must be dismissed.

## VI.   Implied Covenant of Good Faith and Fair Dealing (Count VI)

A breach of the covenant of good faith also would require the existence of a special relationship. *Kinniburgh v. Garrity*, 798 P.2d 102, 104 (Mont. 1990). Plaintiffs allege that 3 Rivers and its members stood in inherently unequal bargaining positions because 3 Rivers maintained a monopoly over its service area, thereby "compelling its members to contract with it for telecommunications services, or go without." (Doc. 9 at ¶ 135.) 3 Rivers argues that these allegations purport to establish

a right to recover tort, as opposed to contract, damages in the breach of covenant claim (Doc. 14 at 29.) 3 Rivers further maintains that Plaintiffs have failed to set forth the necessary criteria to establish the elements of a special relationship that would entitle them to recovery for contract damages, "let alone a breach that would entitle them to tort damages." (*Id*. at 30.)

*Howe* acknowledged that cooperative members often stand in a disadvantageous position with respect to the cooperative when they live in rural areas less likely to be served by a public utility and must rely on a cooperative for power. 670 P.2d 936, 937–38. The Court determined that this disparity between the relative positions gives rise to an obligation on the part of the Cooperative to deal in a reasonable manner with its members. *Id*. at 938. "Dealing in a reasonable manner" falls short of the heightened obligations that arise under a special relationship. Plaintiffs' "inherently unequal bargaining positions" allegation necessarily fails to establish any duty beyond reasonable dealings on the part of 3 Rivers.

As discussed above, and as Plaintiffs admit, the Amended Complaint fails to allege sufficient facts to establish a special relationship. A breach of the covenant of good faith claim requires that ordinary contract damages are an insufficient remedy. *Marshall v. State*, 830 P.2d 1250, 1252 (Mont. 1992). Ordinary contract damages provide a sufficient remedy to make Plaintiffs whole, as all of Plaintiffs claims are

best remedied with a damages award. Plaintiffs do not allege sufficient facts to state a plausible claim for breach of the implied covenant of good faith and fair dealing.

## VII.  Unjust Enrichment (Count VII)

Unjust enrichment claims are permitted only where a contract "is invalid, voidable, or otherwise ineffective to regulate the parties' obligations." *A.C.I. Constr., LLC v. Elevated Property Investments, LLC, et al.*, 495 P.3d 1054, 1060 (Mont. 2021). 3 Rivers stipulates that its bylaws constitute a binding contract that governs the obligations for payment of the patronage capital credits. (Doc. 14 at 18.) Plaintiffs claim that an exception to that rule permits an unjust enrichment claim here. (Doc. 9 at ¶ 143.) Though uncommon, an unjust enrichment claim may be available *despite the presence of a contract* if "a party renders a valuable performance or confers a benefit upon another under a contract that is invalid, voidable, or *otherwise ineffective to regulate the parties' obligations.*" *A.C.I. Constr., LLC* at 1060 (quoting *Associated Mgmt. Servs., Inc. v. Ruff*, 424 P.3d 571, 595 (Mont. 2018) (emphasis added)).

An unjust enrichment claim requires the following elements: "(1) a benefit was conferred upon the recipient by the claimant; (2) the recipient knew about or appreciated the benefit; and (3) the recipient accepted or retained the benefit under circumstances rendering it inequitable for the recipient to do so." *Montana Digital, LLC v. Trinity Lutheran Church*, 473 P.3d, 1009, 1012 (Mont. 2020). Plaintiffs

allege sufficient facts to establish these elements and thus should also be able to maintain alternative arguments: either that the bylaws were ineffective to regulate the parties' obligations and 3 Rivers received a windfall by retaining the Browning Collective's credits; or that the bylaws were binding and required retirement of the capital credits. Plaintiffs allege sufficient facts to state a plausible unjust enrichment claim.

## VIII.  Injunctive Relief (Count VIII)

Plaintiffs agree that injunctive relief is not warranted and stipulate to dismissing this claim. The Court agrees and will dismiss this claim accordingly.

### ORDER

Accordingly, **IT IS ORDERED** that 3 Rivers' Motion to Dismiss Complaint

(Doc. 13) is **GRANTED, IN PART, AND DENIED, IN PART**.

1.  Counts 5, 6 and 8 against 3 Rivers are **DISMISSED**.

Dated this 9th day of August, 2022.


_____
Brian Morris, Chief District Judge
United States District Court